UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

WESTFIELD INSURANCE COMPANY                                                         Plaintiff

v.                                                                                  Civil Action No. 3:20-CV-565-RGJ

J.B. HUNT TRANSPORT, INC.                                                           Defendants

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff Westfield Insurance Company ("Westfield's") motion for remand [DE 10]. Briefing is complete [DE 13; DE 14] and this matter is ripe. For the reasons below, the Court will **DENY** Westfield's Motion For Remand [DE 10].

### I.     BACKGROUND

This case presents a complicated fact pattern involving the relationship between multiple parties and contracts. J.B. Hunt Transport, Inc. ("J.B. Hunt") "is a motor carrier registered with the Federal Motor Carrier Safety Administration." [DE 1-1 at 8]. One of J.B. Hunt's services is the intermodal transport of cargo. *Id.* J.B. Hunt and Dassler Domestic Logistics, Inc. ("Dassler") are parties to an interchange agreement ("Agreement"). *Id.* Under the Agreement, Dassler agreed to transport cargo on behalf of J.B. Hunt from Chicago, Illinois to Louisville, KY. *Id.* The Agreement contained an indemnity provision:

> CARRIER shall release, indemnify and hold harmless HUNT and its customer for and against all loss, damage, liability, cost or expenses suffered or incurred by HUNT or its customer arising out of or connected with injuries to or death of persons, loss or damage to property (included the interchanged equipment) and cargo arising out of the use, operation, or possession by CARRIER of HUNT's equipment unless such loss is caused by the sole act of HUNT or its customer.

*Id.* at 11.

Dassler held a commercial package policy ("Policy") with Westfield. *Id.* at 9. Under the Policy, the parties agreed:

> that such insurance as is afforded by the policy for "Auto Bodily Injury" and "Property Damage Liability" applies to liability assumed by the named insured, as "Motor Carrier Participant," under Section F.4 of the Uniform Intermodal Interchange and Facilities Access Agreement, and any subsequent amendments thereto.

*Id.*

And Mahamed Mohamud ("Mohamud") and Dassler are parties to a lease agreement ("Lease Agreement") "whereby [Mohamud] leased his commercially licensed tractor and related equipment to [Dassler] and agreed to transport certain commodities." *Id.* at 8.

On July 3, 2017, Mohamud "was transporting a load of cargo" for J.B. Hunt from Chicago to Louisville "when he was involved in a motor vehicle accident and allegedly injured." *Id.* at 9. Prime Wheel Corporation ("Prime") manufactured and loaded the cargo Mohamud was transporting on July 3, 2017 into a J.B. Hunt intermodal container in Los Angeles, where it was then transported to Chicago and loaded onto Mohamud's vehicle. *Id.*

Mohamud sued in Los Angeles County, California ("California suit") against J.B. Hunt, twenty John Doe defendants, and Prime. *Id.* Mohamud alleges that "one or more Defendants" in the California suit "improperly loaded the cargo onto the intermodal container, and that the improper loading of the cargo caused the July 3, 2017, motor vehicle accident, resulting in serious personal injury to [him]." *Id.*

After the California suit was filed, J.B. Hunt "sought indemnity and a defense" from Dassler "on the basis of the [Agreement]." *Id.* at 10. Westfield filed a declaratory judgment in Jefferson County Circuit Court in Louisville, Kentucky seeking a judgment declaring that "it has no duty to pay, defend, indemnify, or extend coverage to [J.B. Hunt] for any damages that are

2

sought or may be sought by [Mohamud]." *Id.* at 16. J.B. Hunt removed the action to this Court. [DE 1]. Westfield now seeks to remand it back to Jefferson County Circuit Court. [DE 10].

## II.    DISCUSSION

Under the Declaratory Judgment Act, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The Act does not provide an independent basis for subject matter jurisdiction. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-87 (1995); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). Thus, an action brought under the Act must invoke an independent basis for federal jurisdiction. Here, the independent basis for subject matter jurisdiction is diversity. [DE 1 at 2]. The sole issue raised in Westfield's motion for remand is whether the Court should exercise its discretionary jurisdiction under the Act. While the Act authorizes district courts to exercise jurisdiction, it does not mandate or impose a duty to do so. *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 812 (6th Cir. 2004). The Act grants the "federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). This court considers five factors (the "*Grand Trunk* factors") to determine whether the exercise of Declaratory Judgment Act jurisdiction is appropriate. *Grand Trunk W.R.R. Co. v. Consol. Rail Co.*, 746 F.2d 323, 326 (6th Cir. 1984) (internal quotation marks omitted). Although the Court must balance the five factors, the Sixth Circuit has never clarified the relative weights of the factors. *Id.* at 326.

**1.    Whether the declaratory action would settle the controversy and clarify the legal relations**

The first two *Grand Trunk* factors assess "(1) whether the declaratory action would settle the controversy" and "(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue." *Grand Trunk*, 746 F.2d at 326. Because "it is almost always the case

3

that if a declaratory judgment will settle the controversy, . . . it will clarify the legal relations in issue," the inquiries required by these two factors often overlap substantially. *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 397 (6th Cir. 2019) (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 557 (6th Cir. 2008); *Bituminous*, 373 F.3d at 814; and *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003)).

There are two lines of cases in the Sixth Circuit. *United Specialty Ins. Co. v. Cole's Place, Inc.*, No. 3:17-CV-00326-TBR, 2018 WL 1914731, at *4 (W.D. Ky. Apr. 23, 2018), *aff'd*, 936 F.3d 386 (6th Cir. 2019) (citing *Flowers*, 513 F.3d at 555). "One line of cases approved of declaratory actions because they can 'settle the insurance coverage controversy,' while a second line of cases disapproved of declaratory actions because while they 'might clarify the legal relationship between the insurer and the insured, they do not settle the ultimate controversy.'" *Id*. (quoting *Flowers*, 513 F.3d at 555).

Westfield argues that "[i]f this Court were to exercise jurisdiction over the declaratory judgment action, it would not settle the controversy in the underlying state court litigation in the Los Angeles Superior Court, and therefore, the first factor favors the Court not exercising said jurisdiction." [DE 10-1 at 44]. J.B. Hunt responds:

> Westfield is not a party to the underlying action in the California state court. Westfield's insured Dassler is likewise not a party in the California suit. Moreover, there is no pending Kentucky state court suit about the subject accident whatsoever. The removal here was simply the removal of Westfield's premature declaratory judgment claim with the only issue being Westfield's defense and indemnity obligation to J.B. Hunt if Dassler owes J.B. Hunt defense and indemnity.

[DE 13 at 312].

In duty-to-defend cases, "a court should determine at the outset of litigation whether an insurance company has a duty to defend its insured by comparing the *allegations in the underlying complaint* with the terms of the insurance policy." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d

4

503, 507 (6th Cir. 2003) (applying Kentucky law) (emphasis added). "The interpretation of an insurance contract is a matter of law." *Id.* (citing *Stone v. Ky. Farm Bureau Mut. Ins. Co.*, 34 S.W.3d 809, 810 (Ky. App. 2000)). "The duty to indemnify is narrower than the duty to defend because it only arises when there is an actual basis for the insured's liability to a third party." *Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co.*, 598 F.3d 257, 269 (6th Cir. 2010). "If there is no duty to defend, then there is no duty to indemnify because the duty to defend is broader." *Nautilus Ins. Co. v. Structure Builders & Riggers Mach. Moving Div., LLC*, 784 F. Supp. 2d 767, 771 (E.D. Ky. 2011).

Determining whether Westfield has a duty to defend or indemnify is a purely legal question. *See Westfield Ins. Co. v. B.H. Green & Son, Inc.*, No. 5:11-CV-10, 2011 WL 13210095, at *2 (W.D. Ky. Oct. 17, 2011) ("This declaratory judgment action seeks a determination of whether Westfield has a duty to defend B.H Green and whether the insurance policies at issue provide coverage or benefits to B.H. Green. This is a purely legal question that will be resolved by examining the Lyon Circuit Court complaint and the insurance contracts"). The first factor supports jurisdiction.

As to the second factor, the dispute in the California suit is about liability, not insurance coverage under the Agreement and the Policy. So it is irrelevant whether this declaratory judgment action will "settle the controversy in the underlying state court litigation in the Los Angeles Superior Court." [DE 10-1 at 44]. Rather, the Court must consider whether the declaratory judgment action will "settle the controversy" in this case by resolving the dispute between the insurer and insured over who will pay for the state-court litigation. *See, e.g.*, *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 760–61 (6th Cir. 2014). Because a declaratory judgment appears likely to resolve that dispute, the second factor supports jurisdiction.

### 2. Whether the declaratory remedy is used merely for the purpose of procedural fencing or to provide an arena for a race for res judicata

The third factor considers "whether the use of the declaratory judgment action is motivated by 'procedural fencing' or [is] likely to create a race for res judicata." *Flowers*, 513 F.3d at 558. The Sixth Circuit seldom finds procedural fencing if the declaratory-plaintiff filed after the start of litigation in state court. *Cole's Place*, 936 F.3d at 399. The California suit was filed in October 2018. [DE 10-4 at 78]. This action was filed in Kentucky state court in July 2020 and removed to this Court less than a month later. [DE 1 at 1]. Procedural fencing is thus, unlikely, supporting jurisdiction.

### 3. Whether the use of a declaratory action would increase friction between federal and state courts and improperly encroach upon state jurisdiction

The fourth *Grand Trunk* factor addresses "whether accepting jurisdiction would increase friction between federal and state courts" and is broken into three sub-factors. *Flowers*, 513 F.3d at 559. The first sub-part "focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." *Flowers*, 513 F.3d at 560. Westfield concedes that "[t]he first sub-factor plays little to no role in the present controversy. As discussed previously, the underlying litigation is in California and Plaintiff filed this action initially in Jefferson Circuit Court for clarification as to its duty to defend and indemnify Defendant, if any." [DE 10-1 at 46]. J.B. Hunt agrees: "Because the only pending action relative to the subject accident rests in state court in California, this Court is not being asked to make any factual finding conflicting with any Kentucky suit." [DE 13 at 316]. As discussed above, determining whether Westfield has a duty to defend and indemnify is a purely legal one based on the allegations in the complaint in the California suit. *See Pennsylvania Nat. Mut. Cas. Ins. Co. v. HVAC, Inc.*, 679 F. Supp. 2d 863, 870 (E.D. Tenn. 2009) ("None of the factual issues

6

necessary to resolve the state court action will be important or necessary to the Court in determining the coverage issue; accordingly, resolution of the declaratory judgment action does not depend on any factual issue in the underlying case, and this sub-factor weighs in favor of exercising jurisdiction"). The first sub-factor therefore supports jurisdiction.

    a. <u>Whether the State Trial Court is in a Better Position to Evaluate Those Factual Issues than is the Federal Court.</u>

The second sub-part examines "which court, federal or state, is in a better position to resolve the issues in the declaratory action." *Flowers*, 513 F.3d at 560. The Sixth Circuit has "found that 'issues of insurance contract interpretation are questions of state law with which the Kentucky state courts are more familiar and, therefore, better able to resolve.'" *Id.* at 561 (quoting *Travelers Indem. Co. v Bowling Green Prof. Assoc.*, 495 F.3d 266, 273 (6th Cir. 2007)). Westfield argues that "resolution of the insurance controversy in this case requires a ruling on previously undetermined questions of state law. Specifically, the implications of the use of the Intermodal Agreement between Defendant and Dassler on the coverage available under Westfield's policy is a novel question of Kentucky state law which must be addressed." [DE 10-1 at 47]. J.B. Hunt disagrees: "Westfield's argument that this court will be deciding undetermined questions of state law is misguided. Westfield argues that the Intermodal Agreement is somehow a novel question appropriate only for a state court to decide as a matter of state law. The Intermodal Agreement is simply a contract, subject to basic principles of contract construction and interpretation." [DE 13 at 316]. Based on the briefing at this point, it is unclear whether the declaratory judgment action presents a novel question of Kentucky state law. That said, neither the obligation to defend nor the scope of the Policy is before the court in the California suit. *See Flowers*, 513 F.3d at 561 ("[W]hen an insurance company is not a party to the state court action, and neither the scope of insurance coverage nor the obligation to defend is before the state court . . . a decision by the

7

district court on these issues would not offend principles of comity"). The second sub-factor therefore is neutral and does not weigh heavily in the balance.

> b. Whether There is a Close Nexus Between Underlying Factual and Legal Issues and State Law and/or Public Policy, or Whether Federal Common or Statutory Law Dictates a Resolution of the Declaratory-Judgment Action.

The third sub-part "focuses on whether the issue in this federal action implicates important state policies and is, thus, more appropriately considered in state court." *Flowers*, 513 F.3d at 561. Kentucky state courts are "more familiar and, therefore, better able to resolve" interpretation of insurance contracts. *Id*. Even when the state law is not difficult to apply, the Sixth Circuit has usually found "that the interpretation of insurance contracts is closely entwined with state public policy." *Cole's Place, Inc.*, 936 F.3d at 401, citing *e.g.*, *Flowers*, 513 F.3d at 561 and *Travelers*, 495 F.3d at 273. Because this action involves an interpretation of a Kentucky insurance contract, the third sub-factor counsels against jurisdiction.

**4.      Whether there is an alternative remedy which is better or more effective**

The fifth and final factor asks "whether there is an alternative remedy which is better or more effective" than federal declaratory relief. *Grand Trunk*, 746 F.2d at 326. Kentucky law provides a declaration of rights procedure, under KRS § 418.040. *Mass. Bay Ins. Co. v. Christian Funeral Dirs., Inc.*, No. 18-5267, 2018 WL 6787945, at *8 (6th Cir. Dec. 26, 2018). The Sixth Circuit has held that, "[i]n many ways, this alternative would have been better." *Flowers*, 513 F.3d at 562. Specifically,"[t]he Kentucky courts are in a superior position to resolve undecided questions of state law," and "Kentucky courts might also have been able to combine the two actions so that all issues could be resolved by the same judge." *Id.* For these reasons, overall, the fifth *Grand Trunk* factor weighs against exercising jurisdiction.

**5.      Balancing the Grand Trunk factors**

As noted above, the Sixth Circuit has never suggested the relative weight of the factors; instead, "[t]he relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on facts of the case." *Cole's Place*, 936 F.3d at 396 (citing *Hoey*, 773 F.3d at 759). Further, "[t]he essential question is always whether [the court] has taken a good look at the issue and engaged in a reasoned analysis of whether issuing a declaration would be useful and fair." *Id.* (citing *Hoey,* 773 F.3d at 759) (citation omitted). Having evaluated those factors, the first three factors support exercising jurisdiction, as does one of the sub-factors of the fourth factor. Because of the importance of these factors and the well-established law on these legal issues, the exercise of the Court's discretionary jurisdiction is appropriate. The matter will not be remanded to state court.

### III.    CONCLUSION

Having thus considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court **ORDERS AS FOLLOWS**:

(1) The Court finds that the exercise of its jurisdiction over this declaratory judgment action under 28 U.S.C § 2201 is proper.

(2) Westfield's Motion For Remand [DE 10] is **DENIED**.

*[signature]*
Rebecca Grady Jennings, District Judge
United States District Court

July 20, 2021